## UNITED STATES DISTRICT COURT

SHANA SWENSON             )
                         )
    Plaintiff             )
                         )      **Civil Action Docket No._____**
    v.                  )
                         )
FALMOUTH PUBLIC SCHOOLS  )

## CIVIL ACTION COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff, Shana Swenson (*hereinafter* referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against Falmouth Public Schools (*hereinafter* "Defendant"), and avers as follows:

### INTRODUCTION

1.      Plaintiff initiates the instant action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.), the Pregnancy Discrimination Act ("PDA" – 42 U.S.C. § 2000e (k)), the Maine Human Rights Act ("MHRA" – 5 M.R.S. §§ 4551-4555, 4571-4577), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201, *et. seq*.), and the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq*.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under laws of the United States, including but not limited to Title VII, the PDA, the FLSA, and the FMLA.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of

jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

5.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a  citizen of the District of Maine.

6.      Plaintiff is proceeding herein (in part) under Title VII and the PDA and has properly exhausted her administrative remedies under these statutes by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

7.      Plaintiff is also proceeding herein (in part) under the MHRA. Plaintiff has exhausted her administrative remedies with respect to her MHRA claims by timely filing her EEOC Charge with the Maine Human Rights Commission ("MHRC") and by filing the instant lawsuit within two (2) years of receiving a notice of dismissal from the MHRC.

## PARTIES

8.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.      Plaintiff is an adult individual,  who resides in Portland, Maine.

10.     Defendant Falmouth Public Schools is a public school district located in Falmouth, Maine.

11.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is a female.

14.     Plaintiff was hired by Defendant in or about June of 2015 and began physically working in August of the 2015/2016 school year.

15.     Plaintiff remained employed with Defendant for three (3) years until she was unlawfully terminated from her employment (discussed further *infra*).

16.     During the entirety of her employment with Defendant, Plaintiff was employed as the Response to Intervention ("RTI") 3-5 teacher at Falmouth Elementary School.

17.     During the 2016/2017 school year, Plaintiff worked until in or about January of 2017, at which point in time she took maternity leave for the birth of her son.

18.     Plaintiff gave birth to her son in February of 2017 and remained on maternity leave until August of 2017.

### Plaintiff's Employment Prior to Returning from Maternity Leave in August of 2017

19.     During the first two years of her employment with Defendant, Plaintiff never received any counseling or disciplinary actions regarding her performance or otherwise and was

often times praised for her performance during mini and full classroom observations. For

example:

(1) In Plaintiff's October 19, 2015 mini observation conducted by Ryan Gleason

(former Assistant Principal at Falmouth Elementary School – *hereinafter* "Mr.

Gleason"), Mr. Gleason commented:

> Shana, it is cleat [sic] that you are creating a nice
> learning culture for students in the RTI room and
> beginning to develop a rapport and trust with you
> students. You have worked hard to learn a great deal in
> the first couple of months of school and facilitate a
> process for staff and students that assesses, identifies,
> and allows for intervention instruction.

(2) In Plaintiff's November 18, 2015 Teacher Observation Rubric, Plaintiff was rated

"Highly Effective" in 17 categories, "Effective" in 8 categories, and

"Improvement Necessary" in 0 categories. Mr. Gleason also provided numerous

positive comments regarding Plaintiff's performance in this observation;

(3) In Plaintiff's January 21, 2016 mini classroom observation, Mr. Gleason

commented:

> Shana, knowing that this student is, at times, a
> struggling and reluctant learner, it was exciting to
> observe your work with him. Great pacing, support
> and challenge to keep him moving forward. That
> balance of accountability and supportiveness was
> evident in this lesson with him.

(4) In Plaintiff's May 30, 2016 SMART Goal Reflection, Mr. Gleason commented:

> Congratulations on exceeding your sight word goal!
> Even more importantly, congratulations on your
> growth as a teacher through engaging in this process in
> a manner that is leading to great student success. Your
> understanding and commitment to multi-sensory
> strategies are clearly having a powerful impact on
> student learning.

20.      On or about June 29, 2017, while Plaintiff was still on maternity leave, Gloria Noyes (Principal of Falmouth Elementary School – *hereinafter* referred to as "Ms. Noyes") completed Plaintiff's Probationary Teacher Summative Evaluation for the 2016/2017 school year and rated Plaintiff "Highly Effective" in 25 categories, "Effective" in 31 categories, and "Improvement Necessary" in 0 categories.[1]

21.      Ms. Noyes also commented in Plaintiff's Probationary Teacher Summative Evaluation for the 2016/2017 school year that "Shana is a very dedicated teacher and during the short time we had together was always willing to do what was needed to get the job done . . . It is a joy to work with Shana."

22.      The only comment that was ever made about not advancing Plaintiff to her third year of probation was communicated by Ms. Noyes in Plaintiff's 2016/2017 Summative Evaluation, wherein she discriminatorily insinuates that due to Plaintiff's maternity leave, it would have been advisable to keep her on the second year probation rather than putting her forward for a third year of probation.

23.      Presumably because Defendant knew it was illegal (under Title VII/Pregnancy Discrimination Act and the Family and Medical Leave Act) to not advance someone in their career simply for taking maternity leave[2], it moved Plaintiff forward to her third year of probation.

---

[1] Plaintiff did not receive her 2016/2017 Summative Evaluation until she returned from maternity leave in August of 2017.

[2] *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 424 (1st Cir. 1996) ("Title VII mandates that an employer must put an employee's pregnancy (including her departure on maternity leave) to one side in making its employment decisions. . ."); See also, 29 C.F.R. § 825.220(c):

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, ***employers cannot use the taking of FMLA leave as a negative factor in employment***

**Plaintiff's Return from Maternity Leave and Request for**
**Breaks to Express Breast Milk at Work**

24.     In our about August of 2017, in preparation for her return from maternity leave and the new school year, Plaintiff and Ms. Noyes exchanged e-mail correspondence and spoke verbally about Plaintiff's pumping/nursing plans upon her return to work.

25.     Plaintiff explained to Ms. Noyes that it was her intention to continue to pump/nurse while at work during scheduled and approved breaks.

26.     Specifically, Plaintiff requested to take approximately three breaks during the day to pump and/or physically breast feed her child, as her son was being cared for within the elementary school at Defendant's day care program.

27.     Upon her return to work in August of 2017, and during the first few weeks of school, Plaintiff and her team (consisting of five educational technicians and herself) did not have a case load of students and therefore, the group was primarily performing administrative work.

28.     In an effort to give her team more predictability, Plaintiff distributed a group schedule inclusive of Plaintiff's pumping/nursing break times – which spanned approximately every 2-3 hours and lasted approximately 20 minutes each.

29.     Shortly after distributing the aforesaid group schedule to her team, Plaintiff was approached by Ms. Noyes and asked if she could reduce the amount of times she needed to express breast milk throughout the work day from three times per day to two times per day and for her to take said breaks during her lunch and planning time (rather than at the times her body required it).

---

        *actions*, such as hiring, *__promotions__* or disciplinary actions; nor can FMLA leave be counted
        under "no fault" attendance policies. (emphasis added)

30.     In response to Ms. Noyes' request that she reduce the amount of time she would break from work in order to express breast milk, Plaintiff informed Ms. Noyes that she would need to continue to take three breaks during work to pump and/or nurse in order to properly feed her child and avoid health complications related to breast feeding, such as clogged ducts and Mastitis.

### Discrimination from Plaintiff's Colleagues and Plaintiff's Complaints of Discrimination

31.     Not long after Plaintiff returned to work from maternity leave and began taking pumping/nursing breaks during work, she started being subjected to extreme animosity and hostility by some of the educational technicians she worked with regarding her choice to breastfeed and/or her need to take at least three breaks throughout the work day in order to express breast milk.

32.     For example, Plaintiff was barraged with questions by her team members (i.e. educational technicians) on multiple occasions regarding her intent to keep breastfeeding once RTI received a student case load and how she planned to continue pumping/nursing once RTI had students.

33.     Plaintiff tried to resolve her team members' aforesaid baseless concerns by telling them that she would be flexible and would try to schedule her pumping/nursing breaks around the students' schedule, but that she had a legal right to take breaks throughout the work day in order to express breast milk.

34.     Plaintiff's response to her team members (as stated in Paragraph 31 of this Civil Action Complaint) appeared to be unsatisfactory, as the harassing comments continued to the point that Plaintiff broke down in tears on or about September 27, 2018 after she was again berated by some of her team members, including but not limited to Michelle Sanzari (educational technician), regarding her choice to continue breastfeeding.

35.    Because Plaintiff's attempt to resolve the aforesaid issues surrounding her pumping/nursing breaks had obviously failed (discussed *supra*), Plaintiff expressed her concerns regarding the discriminatory comments and negative treatment surrounding her choice to breastfeed and/or take breaks at work to pump/nurse with Ms. Noyes.

36.    In a feigned attempt to address Plaintiff's complaints regarding the illegal behavior being exhibited by her co-workers, Ms. Noyes met with Mrs. Swenson and her team members on October 2, 2017 to discuss Plaintiff's aforesaid concerns.[3]

37.    During the aforesaid October 2, 2017 meeting between Ms. Noyes, Plaintiff, and the educational technicians on Plaintiff's team, Ms. Noyes' confirmed that Plaintiff had a legal right to take breaks in order to express breast milk throughout the workday and instructed that the negative comments regarding same cease.

38.    Despite Ms. Noyes' aforesaid instruction to Plaintiff's team members to stop their discriminatory questioning and comments regarding Plaintiff's choice to breast feed her child and express breast milk at work, Plaintiff continued to be subjected to a hostile work environment.

39.    In   fact,   in   the   weeks   following   the   October   2,   2017   meeting,   the discriminatory/retaliatory comments only grew worse and more egregious. For example:

        i.   One particular team member, Sallie Gardner, told Plaintiff that her "choices" [i.e. to breastfeed her child] were impacting others, that she did not agree with Plaintiff's "choices," and that there were other ways she could be nourishing her child which would not negatively impact others;

---

[3] In the days preceding the October 2, 2017 meeting with her team and Ms. Noyes, Plaintiff continued to be subjected to discriminatory comments by her team members. For example, on or about September 29, 2017, Sallie Gardner (an educational technician) told Plaintiff she was "disappointed" that Plaintiff had mentioned the law rather than specifically saying she would put the students first upon asking if she still planned to pump/nurse when RTI received a caseload of students.

      ii.   Another team member, Laurie Winslow, told Plaintiff that it "turns [her] off"

when Plaintiff mentions the law (referring to Plaintiff's statements that she has

a legal right to take breaks in order to express breast milk during work).

40.     Due to the continuing hostile work environment that Plaintiff was being subjected to

(discussed *supra*), Plaintiff would often break down emotionally and also underwent stress-related

physical symptoms due to her work environment.

41.     As a result of the aforesaid ongoing discriminatory/retaliatory harassment that she was

being subjected to by her co-workers, Plaintiff was forced to again address her concerns of

discrimination with Ms. Noyes in or about late October of 2017 – specifically informing her that the

discriminatory comments and harassment had not ceased and reiterating that she had a legal right to

take breaks at work to express breast milk without having to feel guilty about it or pressured to stop on

a daily basis.

42.     In response to Plaintiff's aforesaid second complaint of discrimination and retaliation

by her co-workers, Ms. Noyes informed Plaintiff that she would conduct an investigation.

### Retaliation/Discrimination by Defendant's Management

43.     Rather than properly investigating or addressing Plaintiff's concerns of discrimination

and retaliation by her co-workers, Ms. Noyes and Defendant's management began an obvious

campaign to terminate Plaintiff from her employment with Defendant.

44.     During Ms. Noyes' alleged investigation into Plaintiff's expressed concerns of

discriminatory/retaliatory conduct by her co-workers(discussed *supra*), Ms. Noyes never once spoke

with Plaintiff.

45.     It was not until Plaintiff attempted to speak with Ms. Noyes on November 2, 2017 about her alleged "investigation" that Ms. Noyes blindsided Plaintiff and informed her that the "common theme" among her team members [the educational technicians who had been subjecting Plaintiff to constant discrimination since returning from maternity leave] was that Plaintiff's performance and communication were allegedly lacking.

46.     During her conversation with Ms. Noyes, Plaintiff was also informed, without providing any prior warning, counseling, or negative evaluation that Ms. Noyes was going to conduct a "performance review" with her the next day.

47.     On or about November 3, 2017, Plaintiff met with Ms. Noyes, Paul Rosenblum (Union Representative), and Janet Adams (Principal of Falmouth Middle School) to discuss the aforesaid "performance review."

48.     In the beginning of Plaintiff's "performance review" meeting on November 3, 2017, Plaintiff expressed concerns that the performance review meeting was related to (and in retaliation for) her prior complaints of discrimination (discussed *supra*).

49.     Ms. Noyes responded to Plaintiff expressed concerns of retaliation during the November 3, 2017 meeting by stating "that is a separate matter." Plaintiff thereafter continued to question how the matters could be separate if only one day prior Ms. Noyes had informed her that the feedback she received during her alleged investigation into Plaintiff's complaints of discrimination were part of what led to the instant meeting?

50.     During the aforesaid November 3, 2017 performance review meeting, Plaintiff also questioned why Ms. Noyes was even considering the feedback of individuals whom she had previously complained were harassing her and discriminating against her for the last two months.

51.     Instead of addressing Plaintiff's concerns regarding what she believed to be a retaliatory performance review meeting, Ms. Noyes attempted to place Plaintiff on an Action Plan – which was completely baseless, as all of Plaintiff's observations and Summative Evaluations had been positive up until that point.

52.     Because Plaintiff had no prior history of poor performance until she began complaining of discrimination, her union was able to contest the aforesaid Action Plan and upon information and belief, it was never formally issued to Plaintiff.

53.     Following the November 3, 2017 performance review meeting, Ms. Noyes' and other management began to create a paper trail on Plaintiff as a way to expedite her imminent termination. For example:

      i.   Defendant's management began suddenly inserting negative comments in Plaintiff's observations (which were primarily conducted by Ms. Noyes);

      ii.  Defendant's management created a coaching document for Plaintiff (which, upon information and belief, was not used with other employees of Defendant); and

      iii. Ms. Noyes issued Plaintiff her first ever negative summative evaluation in three years wherein she included multiple false and defamatory statements and wherein she downgraded the majority of her "Highly Efficient" and "Efficient" ratings from years before to an "Improvement Necessary" rating (the lowest rating on Plaintiff's summative review).

**Wrongful Termination**

54.     After being subjected to a constant pattern of discriminatory and retaliatory treatment, Plaintiff was informed by Ms. Noyes in or about late April of 2018 that she was not being recommended for a continuing contract for the 2018/2019 school year.

55.     On May 9, 2018, Plaintiff met with the Superintendent of Schools, Geoff Bruno (*hereinafter* "Mr. Bruno"), and expressed that Ms. Noyes' decision not to recommend her for a continuing contract was retaliation for reporting concerns of discrimination and retaliation (as discussed in detail *supra*).

56.     Plaintiff's expressed concerns of discrimination and retaliation regarding Ms. Noyes' decision not to recommend her for a continuing contract fell on deaf ears, as that night (on May 9, 2018), Plaintiff was informed by her union representation that Mr. Bruno was moving forward with Ms. Noyes' decision not to recommend her for a continuing contract.

57.     Approximately two days later, on May 11, 2018, Plaintiff received a letter from Mr. Bruno formally approving Ms. Noyes' aforesaid recommendation and confirming her non-renewal.

58.     Following Mr. Bruno's letter dated May 11, 2018, Plaintiff was also informed by her union representative that Mr. Bruno offered to keep the aforesaid 2017/2018 Summative Evaluation out of her file provided that she did not take legal action against Defendant, which only further demonstrates the pretextual nature of Plaintiff's 2017/2018 Summative Evaluation and Defendant's decision to terminate Plaintiff.

59.     Despite refusing to recommend her for a continuing contract for the 2018/2019 school year (which ultimately resulted in Plaintiff's termination), Ms. Noyes provided Plaintiff with a positive letter of recommendation shortly after Plaintiff's separation, wherein she highlights Plaintiff's strong attributes as an RTI teacher.

60.     Based on the foregoing, Plaintiff believes and avers that her termination from Defendant was completely pretextual and that she was really terminated in violation of Title VII, the PDA, the FLSA, and the FMLA.

61.     The unlawful termination of Plaintiff caused significant damage because it denied her tenure and continued employment (among other damages described *infra*).

## Count I
## Violations of Title VII/PDA
### ([1] Gender/Pregnancy Discrimination; [2] Retaliation)

62.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.     Defendant is and "employer" within the meaning of the Title VII/PDA because, at all times relevant herein, Defendant employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendant.

64.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued negative observations and a negative Summative Evaluation, not recommended for a continuing contract for the 2018/2019 school year, and ultimately terminated from her employment because of her gender/pregnancy[4] and/or in retaliation for complaining of pregnancy/gender discrimination.

---

[4] Courts throughout the United States have held that discrimination against breastfeeding women is prohibited under Title VII/PDA. *See e.g. Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1259 (11th Cir. 2017) ("A plain reading of the PDA supports the finding that the breastfeeding likewise is covered under the PDA.); *EEOC v. Hous. Funding II, Ltd.,* 717 F.3d 425, 428 (5th Cir. 2013) (holding "lactation is a related medical condition of pregnancy for purposes of the PDA"); *Allen-Brown v. District of Columbia*, 174 F. Supp. 3d 463, 2016 (D.D.C. Mar. 31, 2016) ("Although the D.C. Circuit has yet to address this question, the Court finds the Fifth Circuit's analysis in [*Houston Funding*] persuasive."); *EEOC v. Vamco Sheet Metals, Inc.*, 2014 WL 2619812, at *6 (S.D.N.Y. June 5, 2014) (finding that allegations that the plaintiff "was harassed for taking lactation breaks and eventually terminated . . . may be able to state a claim for disparate treatment under Title VII"); *Martin v. Canon Bus. Solutions, Inc.*, 2013 WL 4838913 at *8 (D. Colo. Sept. 10, 2013) ("[T]he Court agrees with a recent decision of the Fifth Circuit in which it held that 'discriminating against a woman who is lactating or expressing breast milk violates Title VII and the PDA.'" (quoting *Houston Funding*, 717 F.3d at 430)).

65. Upon information and belief, these aforesaid actions constitute violations of Title VII/PDA.

## Count II
## Violations of the MHRA
### ([1] Gender/Pregnancy Discrimination; [2] Retaliation)

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Defendant is and "employer" within the meaning of the MHRA because, at all times relevant herein, Defendant employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendant.

68. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, issued negative observations and a negative Summative Evaluation, not recommended for a continuing contract for the 2018/2019 school year, and ultimately terminated from her employment because of her gender/pregnancy and/or in retaliation for complaining of pregnancy/gender discrimination.

69. Upon information and belief, these aforesaid actions constitute violations of MHRA.

## Count III
## Violations of the FLSA
### (Unlawful Retaliation - Wrongful Termination)

70. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71. At all times relevant herein, Defendant has and continues to be an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

72.     At all times relevant herein, Plaintiff was employed with Defendant as "employee[s]" within the meaning of the FLSA.

73.     The FLSA requires covered employers, such as Defendant, to permit reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk. *See* 29 U.S.C. §207(r).

74.     Following the birth of her child, Plaintiff required reasonable breaks to express breastmilk for her nursing child.

75.     In response to Plaintiff's need for breaks, Defendant subjected Plaintiff to hostility, including attempting to dissuade her from taking the breaks she needed.

76.     Plaintiff therefore made complaints as outlined herein.

77.     Following Plaintiff's complaints, Plaintiff was subjected to further hostility and retaliation, including but not limited to being pretextually issued negative evaluations and observations and failing to recommend Plaintiff for a continuing contract and ultimately terminating Plaintiff's employment in retaliation for her complaints.

78.     Defendant's conduct was in violation of 29 U.S. Code Section 215(a)(3) which makes it unlawful for any person to discharge or in any manner discriminate against any employee for making complaint concerning violations of the FLSA or conduct made unlawful under same.

### Count IV
### Violations of the FMLA
### (Interference and Retaliation)

79.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15

80.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

81.     Plaintiff requested leave from Defendant (both intermittent and block leave), her employer with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

82.     Plaintiff had at least 1,250 hours of service with the Defendant during her last full year of employment.

83.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

84.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

85.     Defendant committed interference and retaliation violations of the FMLA by: (1) issuing Plaintiff negative observations and a negative Summative Evaluation for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) not recommending Plaintiff for a continuing contract for the 2018/2019 school year and terminating Plaintiff's employment for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; and (3) making negative comments to and/or engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

16

WHEREFORE, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, prejudgment interest on lost pay interest future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress and/or nominal damages;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees, expert fees and costs as provided by applicable federal and state law;

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

17

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**SALLY A. MORRIS, ATTORNEY AT LAW, LLC.**

*/s/ Sally Morris*
Sally A. Morris, Esq.
Six City Center, Suite 300
Portland, ME 04101
(207) 558-6161 Ext.109

**Of Counsel** (*pro hac vice* applications to be filed):

Jeremy M. Cerutti, Esq.
Yinan Ma, Esq.
Karpf, Karpf & Cerutti, P.C.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801 phone
(215) 639-4970 fax
jeremy@karpf-law.com
yma@karpf-law.com

Dated: May 10, 2019