UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| SHANA SWENSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Docket no. 2:19-cv-00210-GZS |
|  | ) |  |
| FALMOUTH PUBLIC SCHOOLS, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant's Motion to Dismiss Counts III and IV of Plaintiff's Complaint. (ECF No. 7.) Having reviewed the Motion, as well as the related memoranda filed by both parties (ECF Nos. 9 & 10.), the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss Counts III and IV.

**I.  LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, we 'perform [a] two-step analysis." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (alteration in original) (quoting Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the court "must determine whether the 'factual content … allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.'" Id. at 224 (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (alteration in original) (quoting Iqbal, 556 U.S. at 678).

"Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotations omitted). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13. With these principles in mind, the Court now lays out the well-pled factual allegations.

## II. FACTUAL BACKGROUND

In August 2015, Plaintiff Shana Swenson began working for Falmouth Public Schools ("the District") as the Response to Intervention ("RTI") teacher for grades three to five at Falmouth Elementary. (Compl. (ECF No. 1.) ¶¶ 14, 16.) Swenson worked continuously for the District until January 2017, when she took maternity leave, which lasted until August 2017. (Id. ¶¶ 17, 18.) During the first two years of her employment with the District, Swenson was never counseled or disciplined for performance, and she received praise from Falmouth Elementary's assistant principal after classroom observations during the 2015-2016 school year. (Id. ¶ 19.)

Shortly before Swenson returned from maternity leave, Gloria Noyes, Principal of Falmouth Elementary, completed Swenson's 2016-2017 "Probationary Teacher Summative Evaluation." (Id. ¶ 20.) Noyes rated Swenson "Highly Effective" in 25 categories, "Effective" in 31 categories, and "Improvement Necessary" in 0 categories. (Id. ¶ 20.) Noyes indicated that, due

to Swenson's maternity leave, it would have been advisable to keep her on the second year of probation. (Id. ¶ 22.) But the District ultimately advanced Swenson to her third year of probation during the 2017-2018 school year. (Id. ¶ 23.)

Upon her return from maternity leave, Swenson requested to take approximately three breaks during the day to pump breastmilk and/or nurse her child, who was being cared for at Falmouth Elementary's onsite daycare program. (Id. ¶ 26.) Swenson distributed a schedule of her pumping/nursing breaks to her RTI team. (Id. ¶¶ 28, 29.) The schedule provided for breaks of about 20 minutes every two to three hours. (Id. ¶ 28.) Shortly after Swenson distributed the schedule, Noyes asked her if she could take two pumping/nursing breaks per day and take them during her lunch and planning times. (Id. ¶ 29.) Swenson responded that the three breaks she proposed in her schedule were necessary for her health and the proper care of her child. (Id. ¶ 30.) She proceeded to follow her proposed three-break schedule. (Id. ¶ 31.)

Before RTI had a student case load, Swenson received multiple inquiries from her team members about whether she intended to continue pumping and nursing her child once RTI with students commenced. (Id. ¶ 32.) Swenson told team members that she would be flexible and try to schedule her breaks around the student schedule, but she had a legal right to take breaks during the day to express breast milk. (Id. ¶ 33.) Swenson felt harassed, berated, and discriminated against by her team members' questions, which continued after she responded to them. (Id. ¶¶ 33, 34, 35.)

Swenson reported her concerns about her team members' comments to Noyes, who met with Swenson and her team to discuss the matter on October 2, 2017. (Id. ¶¶ 35, 36.) In the meeting, Noyes informed everyone that Swenson had a legal right to take pumping/nursing breaks throughout the workday and instructed that negative comments regarding these breaks cease. (Id. ¶ 37.) However, Swenson's team members continued to make comments to Swenson about her

pumping/nursing schedule, and Swenson felt these comments were discriminatory and harassing. (Id. ¶¶ 39, 40.) Later in October, she reported the continuing comments to Noyes, who said she would investigate Swenson's allegations. (Id. ¶¶ 41, 42.)

On November 2, 2017, Noyes informed Swenson that her investigation into Swenson's complaint had revealed concerns about Swenson's performance, and that Noyes would conduct a performance review with Swenson the next day. (Id. ¶¶ 45, 46.) At this performance review, Swenson expressed concern that the review was retaliation for her complaints of discrimination. (Id. ¶ 48.) Noyes replied that the complaints were a separate matter. (Id. ¶¶ 48, 49.) Noyes attempted to place Swenson on an Action Plan, but Swenson's union contested the Plan since Swenson lacked prior history of poor performance. (Id. ¶¶ 51, 52.) Swenson alleges she was never formally issued the Plan. (Id. ¶ 52.) After the performance review, Swenson began receiving negative comments in classroom observations, was issued a coaching document, and received her first negative summative evaluation, in which most of her "Highly Efficient" and "Efficient" ratings from earlier years were downgraded to "Improvement Necessary." (Id. ¶ 53.)

In spring 2018, Noyes informed Swenson that she was not recommending her for a continuing contract in the 2018-2019 school year. (Id. ¶ 54.) On May 9, 2018, Swenson met with the District's superintendent and expressed her belief that Noyes's decision not to recommend her was retaliation for reporting concerns of discrimination and retaliation. (Id. ¶ 55.) Two days later, Swenson received a letter from the superintendent that formally approved Noyes's recommendation and confirmed Swenson's contract with the District would not be renewed for the 2018-2019 school year. (Id. ¶ 57.)

## III. DISCUSSION

Via the pending Motion to Dismiss, Defendant seeks dismissal of Counts III and IV of

Plaintiff's Complaint. In Count III, Swenson alleges that the District retaliated against her for statutorily protected conduct, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. In Count IV, Swenson alleges that the District is liable under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., for interfering with her use of leave and retaliating against her for taking leave. The District argues that neither of these counts states a cognizable claim. The Court considers each count in turn.

### A. Violations of the FLSA (Count III)

The FLSA establishes federal rules regarding the minimum wages, maximum hours, and overtime pay for certain segments of the workforce. 29 U.S.C. §§ 201 *et seq.* One maximum hour protection, provided for in § 207(r) of the Act, states that employers must "provide a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A). The FLSA also contains an antiretaliation provision forbidding "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act]." 29 U.S.C. § 215(a)(3). The elements of an FLSA retaliation claim are: (1) the plaintiff engaged in a statutorily protected activity, and (2) the plaintiff's employer subjected the plaintiff to an adverse employment action (3) as reprisal for the plaintiff's protected activity. See Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004). Swenson contends that the District violated the FLSA's antiretaliation provision because her complaints about discrimination related to her pumping and nursing breaks caused the District to not renew her contract.

But the FLSA's maximum hour provisions, including the requirement of reasonable break

5

times to express breast milk, do not apply to Swenson: Under § 213(a)(1) of the FLSA, "any employee employed in the capacity of . . . teacher in elementary or secondary schools" is exempt from the maximum hour protections found in § 207. 29 U.S.C. § 213(a)(1). Given this explicit limitation, the District argues that Swenson is not protected by the FLS; therefore, her complaints about discrimination related to her pumping and nursing breaks could not, as a matter of law, constitute FLSA-protected activity that may serve as the basis for an FLSA retaliation claim.

In general, the FLSA's antiretaliation provision protects reasonable, good faith complaints, even if the complained-of conduct does not, in fact, violate the FLSA. See Marcotte v. City of Rochester, 677 F. App'x 723, 726 (2d Cir. 2017); Sapperstein v. Hager, 188 F.3d 852, 857 (7th Cir. 1999) ("Congress made it illegal for any person . . . to retaliate against any employee for reporting conduct 'under' or 'related to' violations of the federal minimum wage or maximum hour laws, whether or not the employer's conduct does in fact violate those laws."); Love v. Re/Max of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984) ("[Section 215(a)(3)] protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal."); Cordero v. Turabo Med. Ctr. P'ship, 175 F. Supp. 2d 124, 128 (D.P.R. 2001) (citing cases in support of the proposition that complaints "need not be meritorious"). "Reasonable" complaints are those which "reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." Claudio-Gotay, 375 F.3d at 102; see also Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011) ("To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."). The reasonable, good faith complaint requirement allows nonmeritorious complaints to form the basis of an FLSA retaliation claim and thereby avoids discouraging protected employees from reporting

6

conduct they reasonably and in good faith suspect to be unlawful. See Sapperstein, 188 F.3d at 857 (describing the policy rationale for allowing FLSA retaliation claims to be based on good faith but mistaken complaints). However, the requirement also demands reasonable expressions of FLSA violations to ensure that employers have fair notice they could be subject to a later claim of retaliation under the FLSA. Kasten, 563 U.S. at 13-14.

Where, as here, Plaintiff was not covered by the FLSA, Plaintiff never mentioned the statute in any of her complaints, and Plaintiff asserted rights that are protected by another statute and a different antiretaliation provision, the court concludes no reasonable employer could have perceived her complaint as a genuine assertion of rights under the FLSA. Cf. Marcotte, 677 F. App'x at 726 (holding that no reasonable employer could have believed that a plaintiff not protected by the FLSA made a genuine assertion of rights under that statute when she complained about using her paid leave account); Leffler v. Creative Health Servs., Inc., No. CV 16-1443, 2017 WL 4347610, *8 (E.D. Pa. Sept. 29, 2017) ("Non-covered employees cannot assert a good faith claim under the FLSA."). The facts pled in Swenson's Complaint indicate she expressed concern to Noyes that she was being discriminated against because she exercised her legal right to take breaks to express breast milk, but they do not indicate that she ever stated these rights were provided her under the FLSA. (Compl. ¶¶ 35, 41.) In fact, state law, not the FLSA, affirms Swenson's entitlement to these rights.[1] Thus, when Noyes told Swenson she had a legal right to take breaks to express breast milk during the workday and later stated she would investigate

---

[1] "An employer . . . shall provide adequate unpaid break time or permit an employee to use paid break time or meal time each day to express breast milk for her nursing child for up to 3 years following childbirth. . . . . An employer may not discriminate in any way against an employee who chooses to express breast milk in the workplace." 26 M.R.S.A. § 604.

7

Swenson's complaints of discrimination, these actions indicated that Defendant was on fair notice of a possible *state law* violation, not an FLSA claim.² (Id. ¶¶ 37, 42.)

The Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq.*, provides a private right of action against retaliatory discharge of employees who report violations of Maine's labor statutes. 5 M.R.S.A. § 4572(1)(A); Costain v. Sunbury Primary Care, P.A., 954 A.2d 1051, 1053 (Me. 2008) ("The MHRA provides a right of action to persons who have been subject to unlawful discrimination, including whistleblowers who have suffered retaliatory discharge or other adverse employment actions."). The MHRA's antiretaliation provision is clearly intended to protect Plaintiff from retaliation for her complaints; the FLSA, on the other hand, is not. With very clear language, Congress exempted Plaintiff from the FLSA's protections, so it is difficult to conceive how her complaint could be "under or related to" the FLSA such that she raises a cognizable FLSA claim. 29 U.S.C. § 215(a)(3). Moreover, Plaintiff points to no case, and the Court has not on its own identified any, in which an employee clearly and explicitly exempted from FLSA coverage has successfully raised an FLSA retaliation claim.³ Under the MHRA, Plaintiff has a remedy for

---

² Plaintiff argues that because Noyes told her she had a legal right to take breaks to express breast milk, Defendant is equitably estopped from now asserting that she did not engage in protected activity under the FLSA. (ECF No. 9, 13-14.) But when Noyes affirmed Plaintiff's right to take breaks, Noyes did not say that Plaintiff's legal entitlement was derived *from the FLSA*. Noyes's statement that Plaintiff had a right to take pumping and nursing breaks reflects a right articulated in Maine's labor statutes. Defendant therefore did not make the misrepresentation of fact Plaintiff alleges, nor does its current motion to dismiss her FLSA claim deny her right to take nursing and pumping breaks. The motion is therefore not equitably estopped. See Phelps v. FEMA, 785 F.2d 13, 16 (1st Cir. 1986) ("Courts invoke the doctrine [of equitable estoppel] when 'one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it' acts to his or her detriment." (quoting RESTATEMENT (SECOND) OF TORTS § 894(1) (1977))).

³ The closest example can be found in Sapperstein v. Hager, 188 F.3d 852, 856-57 (7th Cir. 1999). But for Sapperstein's employers' failure to meet the gross sales threshold, a fact that was established through evidence the Seventh Circuit found questionable, Sapperstein was an FLSA-covered employee; the Seventh Circuit determined that, under these circumstances, stripping Sapperstein of a retaliation claim would chill similar good faith complaints by FLSA-covered employees. Id. at 857. Here, in contrast, Plaintiff is exempted from FLSA protections by the plain text of the statute, so a concern about chilling FLSA complaints does not apply. Moreover, Sapperstein alleged violations of federal child labor and minimum wage law, whereas Plaintiff simply made broad allegations of discrimination and harassment. Id. at 854. Sapperstein's complaint put his employers on notice that he believed the FLSA had been violated, whereas Plaintiff's did not.

the retaliation she alleges, and Defendant does not move to dismiss her claim to this remedy. Given this alternate recourse, the Court GRANTS the Motion to Dismiss as to the FLSA retaliation claim.

### B. Violations of the FMLA (Count IV)

Under the FMLA, an employee may take up to twelve weeks of protected leave in a twelve-month period because of the birth of a child and in order to care for that child. 29 U.S.C. § 2612(a)(1)(A). An employee establishes a prima facie case of FMLA retaliation by showing "(1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between [her] protected conduct and the adverse employment action." Germanowski v. Harris, 854 F.3d 68, 73 (1st Cir. 2017) (alteration in original) (internal quotations omitted) (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)).[4] Employees may also bring claims that an employer unlawfully interfered with their exercise of FMLA leave. See 29 U.S.C. § 2615(a)(1); Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 722 (1st Cir. 2014). Plaintiff alleges that Defendant is liable for violation of the FMLA under both of these theories.

Looking first at the retaliation theory, Plaintiff's Complaint clearly pleads facts establishing the first and second elements of an FMLA retaliation claim, but it is a close question whether the facts pled plausibly establish the third element—a causal connection between her FMLA leave and the adverse employment actions she alleges. Defendant argues that because it presented Plaintiff with a *positive* summative evaluation upon her return from FMLA leave and only criticized her performance after she complained about her co-workers' comments, it is

---

[4] "[A] plaintiff need not plead facts sufficient to establish a *prima facie* case at the pleading stage, [but] the elements of a *prima facie* case are useful 'as a prism to shed light upon the plausibility of a [plaintiff's] claim.'" Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 719 (1st Cir. 2014) (third alteration in original) (quoting Rodriguez-Reyes, 711 F.3d at 54).

implausible that it retaliated against her for taking FMLA leave.[5] But while the causal connection between Plaintiff's FMLA leave and the adverse employment actions alleged is certainly tenuous, at this stage of the litigation, the Court cannot conclude that it is implausible.[6]

Within three months of Plaintiff's return from maternity leave, she received the first negative performance review of her career, and at the first possible opportunity to not renew her contract, Defendant chose not to renew. The temporal proximity of these adverse employment actions is not so close to Plaintiff's FMLA leave that they establish a causal inference standing alone. See Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 315-16 (D.P.R. 2010) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)) (stating that an approximately four-month window was too long to on its own establish a causal inference). But in combination with other facts, they can. See Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 (1st Cir. 2014) ("'[T]emporal proximity' is merely one factor relevant to causation and usually only later in the proceedings, for example at summary judgment." (footnote omitted)). Notably, in the summative evaluation delivered to Plaintiff upon her return from maternity leave,

---

[5] Defendant also contends that because the decision not to continue Plaintiff's contract was made by the District Superintendent and Plaintiff does not allege that the Superintendent knew of her FMLA leave, she cannot establish a causal connection between this adverse employment action and her leave. But Noyes, who did know of Plaintiff's FMLA leave, made the recommendation to the Superintendent that Plaintiff's contract not be renewed. If Noyes's reasons for not recommending Plaintiff were pretextual and the Superintendent approved her recommendation based on those reasons, then the illicit motive was still the cause of Plaintiff's discharge. Cf. Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (holding that because the employee who discharged the plaintiff had no knowledge that the plaintiff had made complaints to other employees and there was no proof that those other employees had "participated [in] or otherwise influenced" the firing employee's investigation and discharge of the plaintiff, causality could not be established). From the facts pled in Plaintiff's complaint, it is plausible that Noyes participated in or otherwise influenced the Superintendent's decision such that causality can be established.

[6] The Court notes that it is a somewhat open question whether Swenson must prove "but-for" causation or need only establish that retaliatory animus was a "negative or motivating factor" behind the adverse employment actions she alleges. See Chase v. U.S. Postal Serv., 843 F.3d 553, 559 n.2 (1st Cir. 2016) (noting that the decision in University of Texas Southwest Medical Center v. Nassar, 570 U.S. 338, 360 (2013), may impact FMLA jurisprudence that has previously imposed only a "negative factor" causation standard); see also Gourdeau v. City of Newton, 238 F. Supp. 3d 179, 183-94 (D. Mass. 2017) (arguing that, in light of Nassar, a "but-for" causation standard should apply). As the parties do not raise the issue in their filings and the Court, at this stage, can outline a plausible claim that would meet the more stringent "but-for" standard, it does not here address the issue.

10

Noyes insinuated that due to Plaintiff's maternity leave, instead of promoting her to her third year of probation, as Defendant eventually did, it would have been advisable to keep her on a second year of probation. Given this statement, it is plausible to infer that when conflict between Plaintiff and her co-workers emerged over her pumping and nursing breaks, Noyes could have used her investigation into the conflict as a basis for a pretextual performance review of an employee she believed had inappropriately been promoted after taking leave. See Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678) (stating that a plausible claim is one for which the facts give rise to a "reasonable inference" of liability). Given Plaintiff's spotless record before her FMLA leave, it is also plausible that Noyes's subsequent negative evaluations of her were pretext for not continuing her employment after she took FMLA leave. While the causal connection may prove too tenuous and not trialworthy on a more developed record, at this stage, "indulging all reasonable inferences in the plaintiff's favor," the Court cannot conclude that it is implausible. Id. at 224.

Having found that Count IV states a plausible claim under Plaintiff's retaliation theory, the Court declines to separately analyze Plaintiff's interference theory. Where a party sets out multiple theories for a claim, "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Once the Court determines that a count is adequately pled to survive a motion to dismiss, the Court need not separately analyze each individual theory if the scope of discovery will not be significantly affected by doing so. See Elena v. Municipality of San Juan, 677 F.3d 1, 8 (1st Cir. 2012) ("The rules are clear that alternative pleadings are proper, and the plaintiffs appear to have presented at least one set of facts sufficient to support a plausible property interest in the tree that forms the centerpiece of this litigation." (internal citation and footnote omitted)); see also BBL, Inc. v. City of Angola, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule

11

12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); Croixland Props. Ltd. P'ship v. Corcoran, 174 F.3d 213, 218 (D.C. Cir. 1999) ("Under Federal Rule of Civil Procedure 8[(d)(2)], a complaint may contain alternative theories, and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint." (footnote omitted)). Here, having determined that Swenson's FMLA retaliation theory is adequately pled, the Court concludes the scope of discovery in this matter will not be significantly affected by Swenson's alternative FMLA interference theory. It therefore DENIES the Motion to Dismiss as to Count IV.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the District's Motion to Dismiss. (ECF No. 7.) In accordance with this ruling, the Court DISMISSES Count III for failure to state a claim.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 27th day of September, 2019.

---

[7] The Court nevertheless acknowledges that Plaintiff may face an uphill battle with the interference theory. Pointing to 29 C.F.R. § 825.220(b), Courts have held that a claim of interference may be brought even where an employee ultimately exercised FMLA leave, if the employee's employer engaged in conduct that could have chilled or discouraged that exercise. See Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 501-02 (M.D. Pa. 2015) ("[T]he fact that [Kimes] eventually exercised her FMLA rights has no bearing on whether the University's conduct discouraged her from exercising those rights."); Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp. 2d 255, 268 (D.N.J. 2001) (stating that even though plaintiff did not accept employer's suggestion that he delay his FMLA leave, "reasonable persons could conclude that [employer's] request 'chilled' Shtab's assertion of his rights under the FMLA"); Williams v. Shenango, Inc., 986 F. Supp. 309, 321 (W.D. Pa. 1997) (stating that the employer's retroactive designation of leave as covered by the FMLA, after having engaged in conduct that "may have 'chilled' or otherwise discouraged [the plaintiff's] assertion of FMLA rights" did not exempt the employer from an interference claim); 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include . . . not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."). But it is questionable whether the facts pled here plausibly indicate that Defendant's conduct could have discouraged Plaintiff, who took all the FMLA leave to which she was then entitled, from taking FMLA leave in future.